Peter C. Lust v. Commissioner. Peter C. Lust and Molly Lust v. Commissioner.
Lust v. Commissioner
Docket Nos. 13381, 13382.
United States Tax Court
1951 Tax Ct. Memo LEXIS 320; 10 T.C.M. (CCH) 176; T.C.M. (RIA) 51053; February 23, 1951
*320 Held, that income was understated in each of the taxable years with fraudulent intent to evade tax. Joseph F. Lawless, Jr., Esq., for the respondent. HILL Memorandum Findings of Facts and Opinion The case of Peter C. Lust, Docket No. 13381, and the case of Peter C. Lust and Molly Lust, Docket No. 13382, were consolidated for hearing by this Court. Respondent determined deficiencies in income tax and victory tax and penalties against petitioners for the taxable years 1942-1945 as follows: Year
Docket No.
Petitioner
Involved
Deficiency
Penalty
13381
Peter C. Lust
1942
$ 3,148.25
$ 1,574.13
1943
13,391.58 *
6,695.79
1944
64,395.19
32,197.60
13382
Peter C. Lust and Molly Lust
1945
36,469.67
18,234.84
The following questions are presented for our determination in this proceeding: 1. Did respondent err in his determination of income and victory tax deficiencies against petitioner Peter C. Lust for the taxable years 1942-1944 and in his determination of an income tax deficiency against petitioners Peter C. Lust and Molly Lust for the taxable year *321 1945? 2. Did petitioner Peter C. Lust understate his income in the taxable years 1942-1944 with fraudulent intent to evade tax, and did petitioners Peter C. Lust and Molly Lust understate their income in the taxable year 1945 with fraudulent intent to evade tax? Findings of Fact Petitioners, Peter C. Lust and his wife, Molly, are now citizens of Canada residing in Montreal. (Hereinafter Peter C. Lust will be designated as petitioner). During the taxable years 1942 through 1945 they were citizens of the United States residing in Great Neck, New York. Petitioner filed income tax returns for the years 1942 through 1944 with the collector of internal revenue for the first district of New York. He and his wife filed a joint income tax return for the year 1945 with the same collector. During the taxable period involved petitioner was first engaged in business only as a brewery supply broker, but later he became an independent dealer in brewery supplies as well. In the year 1942 petitioner was a broker for brewery suppliers, selling grain, malt, barley meal, corn syrup and other supplies to breweries on a commission basis. Starting in 1943 petitioner also became a dealer in brewery *322 supplies, buying direct from the brewery suppliers and selling to breweries on his own account. Petitioner conducted his business during the taxable years under the names of Peter Lust, Lust Grain Corporation, First Syrup Distributing Co., First Malt Distributing Co., and First Malt Syrup Distributing Co. On his income tax return for 1942 petitioner reported brokerage commissions in the amount of $1,727.80 and interest from bank savings accounts in the amount of $358.10, whereas he actually received $10,428.81 from commissions and $589.26 as interest from savings accounts. Petitioner reported a net income of $894.78, whereas his correct net income was $9,826.95. For the taxable year 1943 petitioner reported gross sales and commissions in the amount of $70,304.15 and interest from savings accounts in the amount of $364.30, whereas he actually received $95,885.92 from sales and commissions and $647.29 as interest from savings accounts. He reported a net income of $3,465 in that year. His correct net income for 1943 was $29,329.76. For the taxable year 1944 petitioner reported gross sales and commissions in the amount of $198,921.09 and interest from savings accounts in the amount *323 of $500.77. He actually received $282,735 from sales and commissions and $1,086.33 as interest on savings accounts. He reported net income of $14,574.65 on his return. His correct net income was $98,974.12. On their joint income tax return for the year 1945 petitioners reported gross sales and commissions in the amount of $164,384.59 and interest from savings accounts in the amount of $459.08. Actually sales and commissions in that year amounted to $264,318.93 and interest from savings accounts amounted to $1,556.93. For the taxable year 1945 petitioners reported a net income of $17,001.68, whereas their correct net income was $118,033.87. During the year 1943 petitioner acted as a brewery supply broker for North Kensington Refinery, Inc. On February 12, 1944, he wrote a letter to that company stating he was about to file his income tax return for the prior year and desired to know whether it intended to file a Form 1099 reporting the commissions paid him during the year 1943. Petitioner went on to say that since he was not an employee of North Kensington Refinery, Inc., a Form 1099 should not be filed in regard to the commissions received by him in that year. The company never *324 filed a Form 1099 reporting commissions paid to petitioner. On his income tax return for 1943 petitioner failed to disclose any commissions received from this company. In a net worth statement which he prepared and submitted to respondent upon the latter's request, petitioner reported that he had only four bank accounts as of January 1, 1946, whereas he actually had savings in 22 bank accounts on that date, either in his own name or in trust for his wife or in the name of one of the sole proprietorships under which he conducted his business. In October 1946 petitioner's accountant, whom petitioner had hired to represent him during the investigation of his tax returns, terminated his business relations with petitioner due to the fact that petitioner refused to produce his books and records for 1945 as requested by respondent. During the period from September 1945 through July 1946, when respondent was investigating his returns, petitioner closed out all the bank accounts into which he had put his savings. He then fled with his wife to Canada, where they took up residence. Petitioner and his wife applied at once for Canadian citizenship, which they later obtained. Respondent *325 determined that petitioner realized net income of $12,194.66, $30,701.06, and $99,399.48 in the respective years 1942, 1943 and 1944. He further determined that a part of the deficiency arising in each of these years was due to fraud with intent to evade tax. Respondent determined that petitioners realized net income of $68,440.32 in 1945. He likewise determined that a part of the deficiency arising in this year was due to fraud with intent to evade tax. Petitioner understated his income for each of the taxable years 1942 through 1944 and he and his wife understated their income for the taxable year 1945. Petitioner filed false and fraudulent tax returns for each of the years 1942-1944 with intent to evade tax. Petitioners filed a false and fraudulent tax return for the year 1945 with intent to evade tax. Opinion HILL, Judge: The first question for our decision is whether respondent erred in his determination of income and victory tax deficiencies against petitioner for the taxable years 1942-1944 and in his determination of an income tax deficiency against petitioners for the taxable year 1945. Petitioners did not make an appearance at the hearing, and ordinarily under such *326 circumstances we would uphold the deficiencies determined by respondent as presumptively correct. Yet in the instant case the net income of petitioner determined by respondent for each of the taxable years 1942-1944, upon which his deficiencies for these years are based, is in excess of the net income which he contends is correct on brief. Thus respondent contends in his brief that petitioner realized net income of $9,826.95, $29,329.76 and $98,974.12 in the respective years 1942, 1943 and 1944, while the deficiencies for those years are based upon his determination that petitioner realized $12,194.66, $30,701.06 and $99,399.48 in 1942, 1943 and 1944, respectively. Furthermore, the evidence introduced by respondent at the hearing supports the amounts of net income he states on brief for all four taxable years involved. We therefore adopted these figures in our findings as constituting petitioner's net income for the years 1942-1944 and petitioners' net income for 1945. Thus while we conclude that petitioner understated his income for the years 1942-1944 and petitioners understated their income for 1945, we can only uphold the amount of the deficiency determined by respondent as to *327 1945. It will be necessary to recompute petitioner's income tax liability for each of the years 1942-1944 and petitioner's victory tax liability for 1943 in accordance with our findings under Rule 50. We next must determine whether petitioner filed false returns for the years 1942-1944 with fraudulent intent to evade tax, and whether petitioners filed a false return for the year 1945 with fraudulent intent to evade tax. Respondent must prove such fraudulent intent by clear and convincing evidence. Seldom have we been confronted with such clear-cut, overwhelming evidence of fraudulent intent on the part of taxpayers to escape payment of their just taxes. We have found as a fact that income in the form of commissions, sales and interest from savings accounts were grossly understated in each of the taxable years. As a matter of fact, the total net income actually realized by petitioners over the four-year period is more than seven times the total net income reported. Yet petitioner as a very successful business man had the requisite intelligence to properly report income. No explanation is offered by petitioners for the omission of income from their returns. Such a persistent practice *328 of omitting very substantial amounts of income from returns can not be attributed to mere negligence. We can only conclude that petitioners deliberately misrepresented their income. Specific support for this conclusion is found in petitioner's failure to report large commissions received from the North Kensington Refinery Company on his return for 1943. This omission of income was not inadvertent on his part, for he wrote to the company asking if it was going to report the commissions he had been paid in that year. Another example of petitioner's deliberate misrepresentation of the facts is the net worth statement he submitted to respondent, wherein he stated he had four bank accounts on January 1, 1946, though in actuality he had savings in 22 different bank accounts on that date. In fraud cases the conduct of the taxpayer often sheds light on whether he fraudulently intended to file false returns. We find it of great significance that while respondent was investigating the returns of petitioner and his wife, petitioner closed out all of his bank accounts and fled with his wife to Canada. There they at once proceeded to acquire Canadian citizenship and refused to appear at this *329 hearing to challenge respondent's evidence of their fraudulent intent. We have held that a taxpayer's failure to testify gives rise to a presumption that, had he testified and told the truth, his testimony would have been unfavorable to him. , and . How much more compelling is the presumption where, as here, petitioners refused to even appear before the Court. A further refutation of petitioner's innocence of fraud is the fact that his own accountant broke off business relations with him in October 1946 when petitioner refused to show the Government his books and records for 1945. Under the above circumstances we conclude that petitioner filed false returns in the years 1942-1944 with fraudulent intent to evade tax, and petitioners filed a false return in 1945 with fraudulent intent to evade tax. We therefore uphold the imposition of the 50 per cent fraud penalty in each of the taxable years under section 293 (b) of the Code. In Docket No. 13381 decision will be entered under Rule 50. In Docket No. 13382 decision will be entered for respondent. Footnotes
*. Combined income and victory tax deficiencies.↩